UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 13-28-WOB-CJS

STEPHEN WADE                                                                     PLAINTIFF

v.                  REPORT AND RECOMMENDATION

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY             DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Stephen Wade brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying his application for benefits under Title II of the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). (R. 3). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and, therefore, not entitled to benefits. As explained below, the ALJ failed to satisfy the procedural requirements outlined in the regulations for evaluating the opinions of treating physicians. It will therefore be **recommended** that the Commissioner's Motion for Summary Judgment (R. 14) be **denied**, and Plaintiff's Motion for Summary Judgment (R. 11) be **granted in part** and the matter be **remanded** to the Commissioner.

I.       STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not

2

performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app'x 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. *Id.* Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. *Id.* (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 29, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (A.R. 27). He claimed disability beginning April 13, 2009, based on a herniated and bulging disc, depression, disc disease, multilevel disc displacement, and severe back pain. (*Id.* at 150-51). He was forty-one years old at the alleged disability onset date, had an eleventh-grade education, and had past relevant work experience as a maintenance technician performing tasks such as plumbing, electrical work, drywall, painting, and moving furniture. (*Id.* at 39, 53, 152). His claim was denied initially and upon reconsideration. (*Id.* at 27). Plaintiff then filed a request for a hearing before an ALJ, and this hearing was held on May 3, 2011. (*Id.*). At this hearing, the ALJ received testimony from Plaintiff and vocational expert William Kiger, and Plaintiff was represented by attorney Curtis Hatfield. (*Id.*). After receiving testimony and reviewing the record, the ALJ issued

3

a written decision based on his consideration of the evidence, using the five-step sequential evaluation for determining a disability. (*Id.* at 27-29).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment activity since April 13, 2009, the alleged onset date. (A.R. 29). The ALJ also noted that Plaintiff did work after the alleged disability onset date, but the work activity did not rise to the level of substantial gainful activity. (*Id.*).

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease; major depressive disorder; anxiety disorder; and pain disorder with both physical and psychological features. (A.R. 29). The ALJ also noted that Plaintiff has been diagnosed with hyperlipidemia; hypertriglyceridism; erectile dysfunction; and suffers from a left knee effusion, edema, and a very small tear in the medial meniscus. (*Id.* at 30). But the ALJ stated that these latter impairments were not severe. (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the applicable Federal Regulations. (A.R. 30).

At step four, the ALJ considered the evidence and determined that Plaintiff had the residual functioning capacity (RFC) to perform jobs at the sedentary level. (*See* A.R. 31-39). The ALJ heard testimony from the vocational expert (VE), who stated that based on the RFC provided by the ALJ, Plaintiff could not perform any past relevant work. (*Id.* at 39, 73-74).

The ALJ proceeded to step five and adopted the VE's opinion that, given the stated RFC, there were other jobs in the national economy that Plaintiff would be able to perform, namely representative occupations such as production worker-bench hand, inspector, and packer. (A.R. 40).

Accordingly, on June 9, 2009, the ALJ determined that Plaintiff was not "disabled," for social security purposes. (*Id.* at 41).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council. On January 11, 2013, the Appeals Council denied Plaintiff's timely request for review of the ALJ's decision, rendering the ALJ's June 9, 2011, decision the final decision of the Commissioner. (A.R. 1-3). On March 5, 2013, having exhausted his administrative remedies, Plaintiff timely filed a Complaint asserting the ALJ's decision was erroneous. (*See* R. 1). The matter has culminated in cross-motions for summary judgment. (R. 11, 14). These Motions have been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) (R. 3), and the Motions are now ripe for consideration.

## III. ANALYSIS

The following issues are raised on appeal: (1) did the ALJ err in his consideration of treating physician opinion evidence[1]; and (2) did the ALJ err by denying Plaintiff's request that the VE provide a citation to a publication the VE relied upon in opining that unskilled sedentary packer positions are available in the national economy.[2]

---

[1] Plaintiff's Motion for Summary Judgment raises two issues in connection with the ALJ's treatment of the treating physician: (2) "Did the ALJ err by not accepting the opinion of the treating physician, Dr. Shearer;" and (4) "Did the ALJ err by discounting the testimony of Dr. Shearer because he stated that Dr. Shearer's statement was tarnished due to counsel asking leading questions." (R. 11-1, at 1). Because the second and fourth issues both attack the ALJ's consideration of the treating physician's opinion evidence, the Court addresses these two issues together.

[2] The Court notes that Plaintiff's Motion for Summary Judgment raises an additional issue: (1) "Did the ALJ err by denying benefits even though the substantial medical evidence of record would preclude Plaintiff from all work in the economy." (R. 11-1, at 1). However, this issue is not supported by an argument in Plaintiff's Motion for Summary Judgment. (R. 11-1, at 13). Under the Court's Standing Scheduling Order, the Court will not formulate arguments on the parties' behalf. (R. 8). Accordingly, the Court does not address Plaintiff's first issue presented.

5

**A. The ALJ erred by failing to provide "good reasons" for assigning little weight to Dr. Shearer, Plaintiff's treating physician.**

Plaintiff argues that the ALJ improperly assigned less weight to the opinions of Plaintiff's treating physician, Dr. Shearer. (R. 11-1, at 13). Dr. Shearer testified in his sworn statement that he began seeing Plaintiff as a patient in June or July 2007 (A.R. 1001), and the medical records reflect that Dr. Shearer regularly treated Plaintiff from 2008 to 2011.[3] (*See* A.R. 247-306; 425-598; 989-97). Plaintiff's argument, although not altogether clear, seems to be that the ALJ erred when he failed to provide good reasons for not giving the treating physician controlling weight.[4] (R. 11-1, at 17).

In evaluating opinion evidence under 20 C.F.R. § 404.1527(c), the opinions of treating physicians are given substantial, if not controlling, deference in social security disability proceedings. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted); 20 C.F.R. § 404.1527(c)(2). An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

---

[3] The medical evidence before the Court does not clearly demonstrate when Plaintiff's treatment relationship began with Dr. Shearer. Dr. Shearer's office treatment records begin in January 2008. (*Id.* at 247). However, there is evidence that on at least one occasion Dr. Shearer treated Plaintiff at St. Luke Hospital West in 2007. (*Id.* at 625).

[4] Plaintiff also cites to the opinions of Dr. Huecker, Dr. Saranga, and Dr. Kelly. (*Id.* at 14-16). It is unclear whether Plaintiff is challenging the ALJ's weight assigned to these doctors' opinions or is citing to the opinions as support for his argument that the ALJ erred for not giving Dr. Shearer's opinion controlling weight. In his Motion, Plaintiff does not articulate that the ALJ erred in his assignments of weight to each source's opinion. Therefore, the Court considers Plaintiff's citations to the three other doctors' opinions as being offered in support of his argument that the ALJ erred when he did not assign Dr. Shearer's opinions controlling weight.

Moreover, if a treating physician's opinion is not given controlling weight, "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (citations omitted). But the opinion of a treating physician is entitled to greater weight only if it is based on sufficient medical data, *Houston v. Secretary of Health & Human Services*, 736 F.2d 365, 367 (6th Cir. 1984), and is not contradicted by substantial evidence to the contrary. *Loy v. Secretary*, 901 F.2d 1306, 1308-09 (6th Cir. 1990). Thus, the Commissioner is not bound by the opinion of a treating physician when the opinion is contradicted by objective medical evidence. *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992).

Yet the applicable regulation also contains a clear procedural requirement: an ALJ must give good reasons for rejecting the opinions of treating physicians. 20 C.F.R. § 1527(c)(2); *see also Wilson,* 378 F.3d at 544. These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. (SSR) No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).

The ALJ must identify the substantial evidence that is inconsistent with the physician's opinion, *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013), and "must not be vague or overly general." *Willlis v. Colvin*, No. 12-50-DLB, 2013 WL 4591236, at *3 (E.D. Ky. Aug. 28, 2013). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544 (citations omitted).

If the ALJ does not give the treating physician's opinion controlling weight, he must determine what weight to assign the treating physician's opinion by considering the five factors outlined in 20 C.F.R. §§ 404.1527(c)(1)-(5). *Gayheart*, 710 F.3d at 376; *Willlis,* 2013 WL 4591236, at *3. Failure to weigh the factors in 20 C.F.R. § 404.1526(c)(2) will result in remand. *Gayheart*, 710 F.3d at 380. This standard requires a separate analysis from the ALJ's determination not to give a treating physician controlling weight. *Allums v. Comm'r of Soc. Sec.*, No. 1:12 CV 2245, 2013 WL 5437046, at *3 (N.D. Ohio Sept. 27, 2013) (citing *Gayheart*, 710 F.3d at 375-76).

Here, the ALJ explained his analysis of Dr. Shearer's opinions as follows:

> Further, the undersigned accords less weight to the opinions provided by Dr. Gary Shearer, dated January 25, 2011 and May 10, 2011 and, as they are based upon heavily leading questions provided by the claimant's attorney that greatly reduces the credibility of the answers; they are not consistent with the substantial medical evidence of record, including the doctor's treatment notes; and they are based heavily upon the claimant's self-reports who is found to be an unreliable reporter regarding his symptoms and limitations (Exhibits 13F; 29F/2; 30F). Dr. Shearer opined that the claimant can only walk one city block, but then needs to sit or lie down; and can only sit for thirty minutes before he needs to lay down for approximately 10 minutes; however, the doctor also opined that the claimant cannot sit for more than 30 minutes at a time without changing positions. The doctor also indicated that he should not be in a situation of repeated bending, or lifting greater than ten pounds; and reported that he did not think the claimant could sustain sitting, standing, or walking in combination for an entire eight hour workday, as he would have to lie down for a significant amount of time to relieve his pain.

(A.R. 37).

The ALJ assigned less weight to Dr. Shearer's opinions, stating that his opinions are not consistent with the substantial medical evidence of record, including the doctor's treatment notes. (A.R. 37). The ALJ's findings are ambiguous and do not specify what evidence he relied upon in making his findings. Furthermore, the ALJ does not identify the other specific medical evidence that is inconsistent with Dr. Shearer's opinions. (*Id.*).

8

Moreover, the ALJ did not address evidence in the record that supported Dr. Shearer's opinions. For example, the consultative examiner, Dr. Huecker, opined that Plaintiff "can sit, stand, or walk 15 minutes of each activity and has to alternate these." (A.R. 363). Additionally, Plaintiff's physical therapy records show that during work conditioning, Plaintiff had to take numerous rest breaks and had difficulty advancing due to pain. (A.R. 337, 343). Furthermore, Dr. Shearer's Disability RMS statement listed Plaintiff's restrictions as walking, sitting, standing, bending, and twisting for more than 15 minutes at a time. (A.R. 538).

In this case, the ALJ stated only that Dr. Shearer's opinions are not consistent with the substantial medical evidence of record. He did not identify the substantial evidence in the record inconsistent with Dr. Shearer's opinions and did not address the evidence in the record that supported Dr. Shearer's opinions. Therefore, the Court concludes that the ALJ's reasons for not giving Dr. Shearer's opinions controlling weight are not sufficiently specific to satisfy the requirements of *Wilson* and SSR 92p-2. *See Bryant v. Colvin*, No. 12-202-DLB, 2013 WL 4591265, at *5-6 (E.D. Ky. Aug. 28, 2013) (holding the ALJ's reasons for not giving a treating source controlling weight were insufficient under *Gayheart*, where the ALJ was ambiguous and his decision lacked explanation for the determination that the opinions were inconsistent with the evidence of record); *see also Mills v. Colvin*, No. 3:12cv00104, 2013 WL 2318649, at *10-11 (S.D. Ohio May 28, 2013), *Report and Recommendation adopted by* 2013 WL 3088234 (S.D. Ohio June 18, 2013) (same).

Even if the ALJ's stated reasons in this case for not giving Dr. Shearer's opinions controlling weight were sufficiently specific, the ALJ still erred because he failed to consider the factors set forth in 20 C.F.R. § 1527(c)(2) when he accorded Dr. Shearer's opinions less weight. 20 C.F.R. § 1527(c)

requires that the ALJ weigh the following factors: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion, such as medical signs and laboratory findings; consistency; specialization of the physician; and any other factors brought to the ALJ's attention or of which the ALJ is aware. 20 C.F.R. § 404.1527(c)(2)-(6). Here, the ALJ's decision does not illustrate whether the ALJ weighed any of the factors outlined in 20 C.F.R. § 404.1527(c)(2). By not weighing Dr. Shearer's opinions under the remaining factors in 20 C.F.R. § 404.1527(c)(2), the ALJ failed to meet the procedural requirement of giving good reasons for his decision. *See LaFallet v. Astrue*, No. 2:08-cv-488, 2009 WL 1444562 (S.D. Ohio May 21, 2009).

Plaintiff also argues that the ALJ committed error when he concluded that the credibility of Dr. Shearer's opinions is greatly reduced. (R. 11-1, at 19). Specifically, Plaintiff takes issue with the fact that one reason the ALJ assigned Dr. Shearer's opinions less weight was because the opinions were "based upon heavily leading questions provided by the claimant's attorney that greatly reduces the credibility of the answers." (A.R. 37).

The regulations permit the ALJ to consider other factors of which he is aware that support or contradict a medical opinion. 20 C.F.R. § 404.1527(c)(6). The ALJ did not err simply by taking into consideration that the doctor's opinions were based on leading and suggestive questions. *See Perry v. Soc. Sec. Admin.*, No. 2:12-cv-168-JMH, 2013 WL 4101932, at *8 (E.D. Ky. Aug. 13, 2013) (holding that it was not substantial error to consider whether testimony was the product of leading and suggestive questions to determine whether testimony was credible). This alone is not reversible error. However, because the ALJ did err in explaining the basis for refusing to give Dr. Shearer's

opinions controlling weight, what weight to give to Dr. Shearer's opinions, appropriately explained, remains to be considered on remand.

> **B. Whether the ALJ erred in not directing the VE expert to provide a citation to the U.S. Publishing source the VE relied upon in determining the number of unskilled, sedentary packer positions available can be revisited, if appropriate, after remand.**

Plaintiff argues that the ALJ committed error when he denied Plaintiff's request for the VE to provide a citation to the U.S. Publishing source the VE relied upon in reaching his conclusion regarding the number of unskilled, sedentary packer positions available in the national economy. (R. 11-1, at 18). At the hearing, the following exchange took place:

> Q. Do you have that source with you today, as far as the numbers and how it's broken down?
> A. I just have a reference sheet. I don't. I didn't bring the actual publication with me, no.
> Q. Can you give me the citation to that publication that you used to come up with those job numbers?
> ***
> A. It's U.S. Publishing. It's out of Kansas City.
> Q. Do you have the page number and so forth?
> A. No. It's a publication, and it's - - you order those designated for a particular area. So I have mine, which is specific to the tri-state region, and also have a national resource as well, which is a separate publication for national numbers.
> Q. Okay. How would I locate that? In other words, if I'm looking for a book, I would have the author, the date and the - -
> A. Let me see if I can give you their address, email and phone number.
> Q. I know. But that doesn't give me a citation.
> A. Well, if you want to call them. I mean you can get that information or you can email them.
> Q. Okay. The information that you arrived at for this packer job from the U.S. publication that you referred to, do you have the page number that that information is on and what year and month, et cetera, that you obtained that information from?
> A. This is a fairly recent - - they put that information out quarterly.
> Q. Do you have the date?
> A. And I believe the one I used was through December of 2010.
> Q. Do you have the page number it was on?

> A. No, I don't have a page number. I'd have to look at the publication to give you the page number.
> Q. Can you supply that?
>
> ***
>
> A. Not today.
> ATTY: Okay. Judge, would you consider asking him to supply that information so I can look at that?
> ALJ: I'm not going to require him because I haven't heard an objection for one thing. I have a sense that a large part of his testimony, at least with respect to the packer, is not based on the U.S. publication he's referred to. It's based on his experience.

(A.R. 76-78)

Plaintiff takes issue with the fact that the VE could not provide a citation to the U.S. Publishing source he relied upon in coming to his conclusions regarding the packer position. He argues that "[i]f the vocational expert is relying on a publication in his testimony, he should certainly be required to provide the citation so counsel can confirm the accuracy of the testimony." (R. 11-1, at 19).

Courts are not in agreement over whether a VE's data and reasoning underlying his expert testimony must be available on demand. In the Seventh Circuit, a VE is "'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2003) (*citing Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2003)); *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). In addition, the Seventh Circuit holds that "[t]he data and reasoning underlying a vocational expert's opinions are not 'available on demand' if the claimant must pay for them." *McKinnie*, 368 F.3d at 911.

The Commissioner, however, directs the Court's attention to *Galiotti v. Astrue*, a summary order from the Second Circuit. (R. 14, at 12). In *Galiotti*, the Second Circuit found that it was

sufficient for a VE to identify the sources he generally consulted to determine the number of jobs available in the economy. *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008); *see also Brault v. Soc. Sec. Admin. Comm'n*, 683 F.3d 443, 449-51 (2d Cir. 2012). The Commissioner also cites to *Palmer v. Astrue*. In *Palmer*, the District of Vermont rejected the plaintiff's argument that the data and reasoning underlying the VE's testimony must be available on demand. *Palmer v. Astrue*, No 1:10-cv-141-jgm, 2011 WL 3881024, at *6 (D. Vt. Sept. 2, 2011). The court held that the VE's testimony was sufficient to satisfy the substantial evidence standard when the VE's testimony was based on identifiable statistics and the VE's opinion offered a conservative estimate of the available number of jobs based on the statistics. *Id.*

Counsel has not cited to, and the Court has not found an instance where the Sixth Circuit has directly spoken on the issue. The Sixth Circuit has stated that counsel "cannot complain of the failure of the VE to supply specific statistical evidence in the absence of an express request by counsel for those statistics." *Yopp-Barber v. Comm'n of Soc. Sec.*, 56 F. App'x 688, 690 (6th Cir. 2003). In the instance case, counsel did make an express request for a citation to the U.S. Publishing statistics that the VE relied upon in reaching his conclusions. (A.R. 78). Therefore, this is not a case where counsel has waived the issue.

Nevertheless, in light of the Court's remand on treating physician evidence, whether the Sixth Circuit would require the data and reasoning underlying a VE's opinion to be available on demand need not be decided at this time. The opportunity for clarifying the basis for the unskilled, sedentary packer opinion will be available on remand and can be addressed by the ALJ at that time.

## IV. CONCLUSION

As explained above, the ALJ's consideration of the treating physician opinion evidence necessitates remand, at which time the ALJ can also address clarifying the record as to the basis for the Vocational Expert's opinion. Accordingly, **IT IS RECOMMENDED** that:

1. Defendant's Motion for Summary Judgment (R. 14) be **denied;**

2. Plaintiff's Motion for Summary Judgment (R. 11) be **granted in part** as to Plaintiff's request for a reversal of the Commissioner's decision and remand, and **denied in part** to the extent Plaintiff requests a court ordered award of benefits;

3. the Decision be **reversed** and the matter **remanded** to the Commissioner under sentence four of 42 U.S.C. § 405(g), with instructions to reconsider and adequately explain the treatment of the opinions of Dr. Shearer and clarify the basis for the Vocational Expert's opinion on available unskilled, sedentary packer positions.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir.), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within **fourteen (14) days** after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 6th day of January, 2014.



Signed By:
*Candace J. Smith*
**United States Magistrate Judge**

G:\DATA\social security\13-28 Wade R&R.wpd

14